# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UTILITY WORKERS UNION OF AMERICA, LOCAL 175, | : : : | Case No. 3:17-cv-339 |
| | : | Judge Thomas M. Rose |
| Plaintiff, | : : | |
| v. | : : | |
| THE DAYTON POWER & LIGHT COMPANY, et al., | : : : | |
| Defendants. | : | |

## ENTRY AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (DOC. 4) AND TERMINATING CASE

This case is before the Court on the Motion to Dismiss (Doc. 4) for lack of subject matter jurisdiction filed by Defendants The Dayton Power & Light Company, DPL, Inc., AES Ohio Generation LLC, and The AES Corporation (collectively "Defendants"). Plaintiff Utility Workers Union of America, Local 175 ("Local 175") filed a Response in Opposition (Doc. 6) to the Motion to Dismiss, in response to which Defendants filed a Reply. (Doc. 13.) This matter is therefore fully briefed and ripe for review. For the reasons below, the Court **GRANTS** the Motion to Dismiss (Doc. 4).

### I. BACKGROUND

#### A. Parties

Defendant Dayton Power & Light ("DP&L"), an Ohio corporation based in Dayton, Ohio, produces and distributes electric energy and provides service to

customers in Southwest Ohio. (Doc. 1 at ¶ 4.) Plaintiff Local 175 is the duly recognized and exclusive bargaining agent for DP&L's Power Production, Service Operations and Financial Operations employees. (Doc. 1 at ¶ 3.)

Defendant AES Ohio Generation LLC ("AES Ohio") is engaged in the generation of electric power and wholesale power sales from existing generation facilities located in Ohio. (*Id.* at ¶ 7.) Plaintiff alleges that DP&L and AES Ohio are fully owned by Defendant DPL, Inc. ("DPL"), which is their immediate parent, and are "indirect, wholly owned subsidiaries of Defendant AES Corporation ("AES"). (*Id.* at ¶¶ 6-7.)

Plaintiff alleges that DP&L, DPL, AES Ohio and AES Corporation constitute a single employer due to the interrelation of their operations, common management, centralized control of labor relations and common ownership. (*Id.* at ¶ 8.)

## B. Factual Allegations

Local 175 and DP&L are parties to a collective bargaining agreement, referred to as the Compact, that covers the terms and conditions of employment of all DP&L employees in the production and distribution of electric energy and in the service of customers. (*Id.* at ¶ 8.) The Compact's effective date is November 1, 2014 through October 31, 2017. (*Id.*)

On August 24, 2017, Local 175 and DP&L held their first bargaining session regarding a new collective bargaining agreement. (*Id.* at ¶ 14.) At their next bargaining session on September 11, 2017, DP&L informed Local 175 that the Federal Energy Regulatory Commission had approved the transfer of two generation facilities, named Stuart Station and Killen Station, and their ancillary assets from DP&L to AES Ohio. (*Id.*

2

at ¶ 15.) Stuart Station and Killen Station together employ more than 290 bargaining unit employees represented by Local 175. (*Id*. at 13.) AES Ohio thereafter joined in the negotiations between Local 175 and DP&L regarding the terms of a new collective bargaining agreement. (*Id.* at ¶¶ 16-18.)

On September 21, 2017, DP&L notified Local 175 that, after the transfer of assets from DP&L to AES Ohio, no Stuart Station and Killen Station employees would be entitled to use their seniority to bump into any position or to exercise "Career Preference" rights to transfer into open positions in DP&L's Service Operations or Financial Operations in Dayton, Ohio. (*Id*. at ¶ 18.) DP&L took the position that these employees would not be entitled to exercise these rights under the Compact because, after the transfer, they would cease to be DP&L employees. (*Id*. at ¶ 16.)

On the same day, Local 175 submitted a written grievance to DP&L and AES Ohio pursuant to the Compact's "Issue Resolution" process. (*Id.* at ¶ 20.) In the grievance, Local 175 alleges that DP&L's refusal to honor its employees' employment rights and seniority rights violated the Compact. (*Id.*) The Issue Resolution process normally takes "months to complete" and culminates in the submission of the grievance to a neutral arbitrator for determination. (*Id.* at ¶ 21.)

On October 1, 2017, DP&L transferred Stuart Station and Killen Station to AES Ohio. AES Ohio has represented—and the parties do not dispute—that it intends to close Stuart Station and Killen Station effective June 1, 2018.

### C. **Plaintiff's Complaint and Motion for Preliminary Injunction**

Local 175 alleges, as in its grievance, that Defendants violated the Compact by refusing to recognize the Stuart Station and Killen Station employees' contractual rights following the transfer of those facilities to AES Ohio. Pending an arbitrator's determination of that issue pursuant to the Compact's Issue Resolution process, Local 175 seeks an injunction "enjoining the Defendants from prohibiting affected bargaining unit employees represented by Plaintiff from exercising their rights under the [Compact] . . . including, but not limited to the right to bump into open positions in DP&L's Service Operations and/or Financial Operations located in the Dayton, Ohio area." (Doc. 2 at 1.)

On October 17, 2017, the Court denied Local 175's Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction. (Doc. 14.)

## II. DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss the Complaint on the grounds that the Court does not have jurisdiction to enter the requested injunctive relief under the Norris-LaGuardia Act, 29 U.S.C. §§ 101, 104.

The Norris-LaGuardia Act provides:

> No Court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. § 101. The term "labor dispute" is defined as "any controversy" between an employer and its employees "concerning terms and conditions of employment." 29

U.S.C. § 113(a)(1), (c). "The Supreme Court has consistently interpreted the term 'labor dispute' broadly." *Beck v. Gannett Satellite Informational Network, Inc.*, 124 F. App'x 311, 323 (6th Cir. 2005).

The Norris-LaGuardia Act also specifically provides that:

> No court of the United States shall have jurisdiction to issue any injunction in any case involving or growing out of any labor dispute to prohibit any person . . . from . . .
>
> (a)     . . . refusing . . . to remain in any relation of employment . . . .

29 U.S.C. § 104.

Notwithstanding these express prohibitions against the issuance of injunctive relief, the Supreme Court has recognized certain circumstances in which a district court may enter an injunction relating to a labor dispute under the Norris-LaGuardia Act. *See Buffalo Forge Company v. United Steelworkers of America*, AFL-CIO, 428 U.S. 397 (1976); *The Boys Markets v. Retail Clerks Union*, 398 U.S. 235 (1970). The Sixth Circuit has summarized the principles set forth *Boys Markets* and *Buffalo Forge*:

> In *Boys Markets, Inc. v. Retail Clerk's Union, Local 770*, the Supreme Court reconciled the broad anti-injunction provisions of Section 4 of the Norris-LaGuardia Act (Act) with strong congressional preference for arbitration. The Court reasoned that the inability of an employer to obtain judicial enforcement of a no-strike clause in a collective bargaining agreement could do more to undermine the arbitral process than a strictly enforced anti-injunction policy would do to promote it. The employee's promise not to strike is the quid pro quo for the employer's promise to arbitrate. Therefore, absent some mechanism for the enforcement of the no-strike obligation an employer has little incentive to commit itself to arbitration. To remedy the situation, the Court enunciated "a narrow exception" to the rigid prohibitions of Section 4. It held that a court may enjoin a strike which violates an express no-strike clause of a collective bargaining agreement where the parties have agreed to mandatory arbitration and traditional equitable bases for relief have been met. *Id*. 398 U.S. at 249-53;

5

> *Buffalo Forge*, 428 U.S. at 407; *Aluminum Workers International v. Consolidated Aluminum Corporation*, 696 F.2d 437, 441 (6th Cir. 1982).
>
> In *Buffalo Forge v. United Steelworkers*, the Supreme Court refined the *Boys Markets* exception. The Court reasoned that *Boys Markets* was designed solely to further the national policy favoring peaceful resolution of labor disputes through arbitration. *Id*. 428 U.S. at 408. This policy is not in peril where neither the causes nor the issues underlying the dispute is subject to mutually binding arbitration. *Id*. at 407-08. Thus, the Court emphasized that a federal court may not enjoin unilateral action taken in response to a dispute simply because it violates the collective bargaining agreement. *Id*. at 410. Indeed, federal courts are similarly without jurisdiction where the legality of the unilateral action is subject to arbitration. *Id*. at 411. Injunctive relief is only available where the parties had agreed to arbitrate the dispute which precipitated the unilateral action in violation of the collective bargaining agreement. *Id*. at 407.

*Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Lester Eng'g Co.*, 718 F.2d 818, 822 (6th Cir. 1983) (emphasis added).

"Since *Boys Markets*, the Supreme Court has emphasized that the anti-injunction provisions of the Norris–LaGuardia Act are to be given a 'broad interpretation' and that the *Boys Markets* exception is to be recognized 'only in limited situations where necessary to accommodate the Act to specific federal legislation or paramount congressional policy.'" *Allied Sys. Ltd. v. Teamsters Nat. Auto. Transporters Indus. Negotiating Comm., Local Union 327*, 179 F.3d 982, 987 (6th Cir. 1999) (quoting *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 708 (1982)).

In *Boys Markets*, the Supreme Court articulated a four-step analysis that a district court must follow to determine whether to issue an injunction pending arbitration of a labor dispute:

> First, the controversy must involve or grow out of a labor dispute within the meaning of Section 4 of the Act. Second, a full evidentiary hearing

must be held. Third, the court must find that the dispute underlying the controversy is subject to binding arbitration under the terms of the collective bargaining agreement. Finally, the traditional equitable bases for injunctive relief must be met.

*Boys Markets*, 398 U.S. at 249-53. "A court has jurisdiction to issue an injunction only where all four of the above steps have been completed and satisfied." *Id*.

In this case, mechanically applying this four-step analysis, however, would fail to take into account the Sixth Circuit's admonition that the *Boys Markets* exception should apply "only in limited situations where necessary to accommodate the Act to specific federal legislation or paramount congressional policy.'" *Allied Sys. Ltd.*, 179 F.3d at 987 (internal quotes omitted). This case does not present the same circumstances as did *Boys Market*. In that case, an employer sought to enjoin its employees from striking pursuant to a no-strike clause in a collective bargaining agreement. The Supreme Court reasoned that allowing the employees to strike over an arbitrable issue would discourage employers from agreeing to arbitration in the first place. The employer would be discouraged because, without the injunction, it would not receive the benefit of its bargain with the union. It agreed to arbitrate to avoid such costly tactics as a labor strike. Here, in contrast, DP&L does not seek to enjoin a strike. Instead, Local 175 seeks to enjoin DP&L from refusing to recognize union employees' rights under the Compact. Specifically, Local 175 wants DP&L to honor their rights to transfer to other positions under the Compact's "Career Preference" provision.

Is this a situation, as in *Boys Markets*, where the injunction is necessary to protect a party's agreement to arbitrate a labor dispute? It is not. To the contrary, entering the

7

injunction is likely to discourage DP&L from agreeing to arbitration in the future. The requested injunction would essentially provide Local 175 a temporary victory in their dispute with DP&L and virtually of the ultimate relief that they seek pending the arbitrator's decision. If DP&L then prevails at arbitration, it would have difficulty returning to its pre-injunction position—if that would even be possible in light of any new collective bargaining agreement between the interested parties. In such a scenario, DP&L might reasonably ask why it ever agreed to arbitration in the first place. Local 175's employees, on the other hand, can be made whole if the arbitrator finds in their favor, even if they are denied the injunction. (Doc. 14 at 7-8, citing *Aluminum Workers International Union, AFL-CIO, Local Union No. 215 v. Consolidated Aluminum Corporation*, 696 F.2d 437 (6th Cir. 1982).)

In addition, this case is also unlike *Boys Markets* in that, by granting the injunction, the Court would be touching on the merits of the parties' dispute. In *Boys Markets*, the Supreme Court found that the injunction should be granted so that the arbitrator could decide the disputed issue. Here, Local 175 asks the Court to grant essentially the same relief that it seeks from the arbitrator. As a result, by entering an injunction, rather than furthering "the national policy favoring peaceful resolution of labor disputes through arbitration," the Court would be slightly undermining the arbitrator's ability to provide appropriate relief to at least one of the parties. *Lester Engineering*, 718 F.2d at 822.

In sum, the Court finds that Local 175 has not met its burden of showing that this case falls within the narrow exception to the Norris-LaGuardia Act set forth in *Boys*

8

*Markets*. *Allied Sys. Ltd.*, 179 F.3d at 987 (party seeking *Boys Markets* injunction has the burden of showing that it is entitled to such an injunction).

### III. CONCLUSION

The Court **GRANTS** Defendants' Motion to Dismiss (Doc. 4) Plaintiff's Complaint. This case shall be terminated on the docket of this Court.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, February 14, 2018.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE